IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA LEIBERT, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| PHILADELPHIA HOUSING | : | |
| AUTHORITY, et al., | : | No. 10-5412 |
|     Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                                                        March 14, 2011

Plaintiff Laura Leibert has sued the Philadelphia Housing Authority ("PHA") and three PHA officials: Carl Greene, Linda Staley, and Malvin Reyes. Leibert alleges violations of her First and Fourteenth Amendment rights over a three-year period, stemming from Greene's sexual harassment and Defendants' retaliation against her for reporting it. Leibert brings her claims under 42 U.S.C. §§ 1983 and 1985. Currently before the Court are Defendants' motions to dismiss. For the reasons stated below, the Court grants the motions.

**I.     BACKGROUND**

Leibert began working as a technical aide for PHA in April 2005. (Am. Compl. ¶ 27.) In this role, she was supervised by Staley, PHA's executive general manager. Leibert's duties included providing job training and educational programs to PHA residents. (*Id.* ¶¶ 8, 30.) In July of 2005, Leibert was introduced to Greene, who served as PHA's executive director. (*Id.* ¶ 7, 29.) In August of 2005, Leibert encountered Greene at a PHA event while she was working handing out brochures. (*Id.* ¶ 31.) Greene pulled her aside and "ordered her to eat lunch with him at his table, along with other PHA high ranking officials." (*Id.*) In December of 2005, at the PHA Christmas party, Greene

"forced plaintiff and three other PHA female employees to sit in defendant Greene's secluded, guarded, 'VIP' room during the party." (*Id.* ¶ 32.) At the same party, Greene pulled Leibert aside to tour the music production booth and asked her personal questions. (*Id.*) Greene then "demanded" that Leibert go out to a bar with him after the party. He also asked for and memorized Leibert's cell phone number. (*Id.*) Approximately thirty minutes after Leibert left the party, Greene called her and informed her that she was to call him "Carl" in private and "Mr. Greene" in front of others. (*Id.* ¶ 34.) During the conversation, Greene asked Leibert about her boyfriend and informed her that she needed "an older man, with money and power who travels the world." (*Id.*) Greene "ended the call by continuing to insist that plaintiff go out to dinner with him sometime soon." (*Id.*)

In February of 2006, Leibert was promoted to project management coordinator. (*Id.* ¶ 36.) Her new duties included managing a PHA home ownership program and assisting with home sales. (*Id.*) Reyes, PHA's supervisory asset manager, became Leibert's supervisor. (*Id.* ¶ 37.) In March of 2006, Leibert again encountered Greene at work, where they discussed Leibert's attendance of law school. (*Id.* ¶ 38.) Leibert informed Greene that she had applied to Temple Law School, and Greene offered to write her a recommendation. (*Id.* ¶ 38-39.) Green ended the conversation "by insisting that plaintiff go to dinner with him." He also mentioned that Leibert would soon be living closer to him and that should make it easier for them to "get together after work." (¶ 39.) Leibert responded that she was very busy and in a committed relationship. (*Id.* ¶ 40.)

In June of 2006, Leibert attended a work-related event, where Greene approached her and told her that "he spoke with Temple Law School's dean and there was nothing he could do for her admission to law school." (*Id.* ¶ 42.) At the event, Greene "forced plaintiff to be his dance partner in the salsa dancing lesson room, after repeatedly telling him she was not comfortable and did not

2

dance." (*Id.* ¶ 43.) Greene told her that she was "very shy," and that he "felt the need to pull [her] out of [her] shell." (*Id.*) Greene insisted that Leibert go to a bar with him after the event, but she declined. (*Id.*) At some other point during 2006, Leibert attended a mandatory PHA training session conducted by Greene, where he "tried to publicly humiliate plaintiff by repeatedly asking her unreasonable questions that were impossible to answer." (*Id.* ¶ 45.). In December of 2006, Leibert did not attend the PHA Christmas party for fear of encountering Greene. (*Id.* ¶ 46.)

In October of 2007, Leibert was relocated to another PHA office in West Philadelphia. (*Id.* ¶ 53.) This new location was less desirable because unlike her previous office on Broad Street, it lacked adequate security to handle "unruly clients." (*Id.* ¶ 54.) As a result, Leibert feared for her safety. (*Id.*) Leibert raised her concerns with Staley and Reyes, but they were unresponsive. (*Id.* ¶ 55.).

In November of 2007, Leibert was "coerced" into joining the Pennsylvania Institute of Affordable Housing Professionals ("PIAHP"), a non-profit organization established to lobby for federal funding. (*Id.* ¶ 47.) After joining, Leibert refused to attend any PIAHP events that required interactions with Greene, because she "avoided Greene as much as possible with a constant fear that doing so would cost her job." (*Id.* ¶ 48.) When Leibert failed to attend several PIAHP events, she received calls from Reyes and Staley informing her that she was required to attend the events because "Carl Greene was looking for her and these trips were not optional." (*Id.* ¶ 49.) Leibert informed Reyes that she refused to attend any of the events because she "feared Greene and his advances." (*Id.* ¶ 50.)

In December of 2007, Leibert did not attend the PHA Christmas party for fear of encountering Greene. (*Id.* ¶ 56.) In September of 2008, Leibert was transferred back to PHA's

3

Broad Street location. (*Id.* ¶ 57.) That same month, Leibert encountered Greene, who noticed that Leibert was pregnant. (*Id.* ¶ 58.) Greene "looked at her stomach and looked at her face and asked in a mean tone, 'when's the wedding?'" He also asked if she was "happy with the situation." When Leibert responded that she was, "Greene again in a mean tone said 'good luck with that.'" (*Id.*) On October 17, 2008, Leibert resigned because of fear of retaliation and the hostile work environment created by Greene and the other defendants. (*Id.* ¶ 58.) Leibert characterizes her resignation as a constructive discharge. (*Id.* ¶ 1.)

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate dismissal of complaints which fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court accepts "as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom," viewing them in the light most favorable to the non-moving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The defendant bears the burden of establishing that the complaint fails to state a claim upon which relief can be granted. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

This Court applies a two-part analysis to determine whether claims survive a Rule 12(b)(6) motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim, accepting well-pleaded facts as true, but disregarding legal conclusions. *Id.* Second, the Court must determine whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id.* at 211 (citing *Phillips*, 515 F.3d at 234-35). If the well-pleaded facts "do not permit the court to infer more than the mere

possibility of misconduct," the complaint should be dismissed for failure to state a claim. *Jones v. ABN Amro Mortg. Grp.*, 606 F.3d 119, 123 (3d Cir. 2010).

Courts look to the complaint and attached exhibits in ruling on a motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court need not, however, consider facts or legal theories alleged for the first time in a plaintiff's opposition brief. *See Mulholland v. Classic Mgmt. Inc.*, Civ. A. No. 09-2525, 2010 WL 2470834, at *6 n.7 (E.D. Pa. June 14, 2010) (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

### III. DISCUSSION

#### A. Section 1983 Claims

Leibert brings claims under 42 U.S.C. § 1983, alleging violations of her rights under the First and Fourteenth Amendments. Section 1983 provides that a plaintiff may bring a lawsuit against a state actor for a violation of a right, privilege or immunity secured by the Constitution or laws of the United States. *See Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Section 1983 is "not itself a source of substantive rights," but provides a method for vindicating federal rights conferred elsewhere. *Id.*

##### 1. First Amendment claim

Leibert alleges that Defendants retaliated against her for expressing her concerns about Greene's harassment, resulting in unspecified disciplinary action and ultimately her constructive termination. Specifically, the Amended Complaint alleges that she rebuffed Greene's advances on various occasions, that she raised concerns about working conditions at the West Philadelphia

location with Staley and Reyes sometime after October 2007, and that she informed Reyes sometime after November 2007 that she feared Greene's conduct.

A First Amendment retaliation claim requires a showing that: (1) the plaintiff engaged in constitutionally protected speech; (2) she suffered retaliatory action; and (3) the protected activity caused the retaliation. *See Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997).

"Protected speech" must relate to "matters of public concern," which means that it must be "fairly considered as relating to any matter of political, social, or other concern to the community." *Holder v. City of Allentown*, 987 F.2d 188, 194-95 (3d Cir. 1993). Whether speech can be "fairly characterized as relating to any matter of political, social, or other concern to the community is determined by its content, form and context." *Id.* at 195 (quoting *Connick v. Meyers*, 461 U.S. 138, 147-48 (1983)).

To establish a causal connection between protected speech and alleged retaliation, a plaintiff may demonstrate "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007). A public employer commits a retaliatory act for First Amendment purposes "when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). The act must be "more than de minimis or trivial." *Id.*

Assuming she engaged in protected speech, the Court concludes that Leibert does not plausibly allege any link between any specific speech and any particular retaliation. The Amended

Complaint sets forth two acts that could be characterized as retaliatory: (1) Leibert's transfer to the undesirable West Philadelphia location and (2) Staley's and Reyes's unresponsiveness to her concerns about working there. A third alleged act, Greene's asking Leibert "unreasonable questions" at the training session, does not qualify as retaliatory. *See id.* ("[C]ourts have declined to find that an employer's actions have adversely affected an employee's exercise of [her] First Amendment rights where the employer's alleged retaliatory acts were criticism, false accusations, or verbal reprimands.")

Leibert does not allege that Staley or Reyes had any knowledge of her interactions with Greene at the time of either incident. With respect to Greene, she does not allege that he had anything to do with either the transfer or the other defendants' ignoring her concerns. Therefore, she has not alleged that any protected speech caused retaliation. Accordingly, Leibert's § 1983 First Amendment claim will be dismissed. *See Jones*, 606 F.3d at 119.

### 2. Fourteenth Amendment claims

Leibert alleges that Defendants violated her equal protection rights under the Fourteenth Amendment by creating a hostile work environment and retaliating against her. In order to succeed on a § 1983 equal protection claim, a plaintiff must demonstrate that she received different treatment from that received by other similarly situated individuals, and that this discrimination was purposeful. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005); *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d. Cir.1990). Leibert has not alleged she was treated differently than anyone else. Therefore, her equal protection claim will be dismissed.

Leibert also alleges violations of her Fourteenth Amendment due process rights. However, she fails to indicate whether she alleges procedural or substantive violations of her due process

rights. In any event, her due process claims fail under either theory.

The substantive component of the Due Process Clause bars certain arbitrary, wrongful government actions "regardless of the fairness of procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Only those interests deemed "fundamental" are entitled to substantive due process protection. *Hill v. Borough of Kutztown*, 455 F.3d 225, 235 (3d Cir. 2006); The Third Circuit has held that employment is not a fundamental right entitled to substantive due process protection. *Id; Wrench Transp. Sys., Inc. v. Bradley,* 340 F. App'x 812, 815 (3d Cir. 2009). Therefore, to the extent that Leibert has alleged a substantive due process claim, it will be dismissed.

To state a procedural due process claim, a plaintiff "must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). The only interest implicated by the Amended Complaint is Leibert's property interest in her employment.

"To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Whether a person has a legitimate entitlement to employment is a matter of state law. *Id.* Under Pennsylvania law, a "public employee takes his job subject to the possibility of summary removal by the employing authority. [She] is essentially an employee-at-will." *Id.* (quoting *Scott v. Phila. Parking Auth*., 166 A.2d 278, 280 (Pa. 1960)). Accordingly, "a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment." *Id.*

Leibert has not asserted that she had anything more than a "unilateral expectation of continued employment," and has not alleged that she was anything more than an at-will employee. Accordingly, to the extent that Leibert has alleged a procedural due process claim, it will be dismissed.

**B.     Conspiracy Claims**

Leibert alleges that Greene, Staley, and Reyes conspired to violate her First and Fourteenth Amendment rights under 42 U.S.C. §§ 1983 and 1985. In order to prevail on a § 1983 conspiracy claim, a plaintiff "must show that persons acting under color of state law conspired to deprive [her] of a federally protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir. 1999). Section 1985(3) prohibits conspiracies to deprive a "person or any class of persons equal protection of the laws, or of equal privileges and immunities under the law . . . ." To state a claim under § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997).

"Central to any conspiracy claim [are] specific factual allegations that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end." *Keys v. Commonwealth of Pa.*, Civ. A. No. 10-2487, 2011 WL 766978, at *26 (M.D. Pa. Jan. 19, 2011) (citing *Marchese v. Umstead,* 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000)). The Amended Complaint's only reference to a civil rights conspiracy alleges that "Defendant[s] Greene, Staley, and Reyes acted individually, collectively, and/or in concert as co-conspirators in causing the deprivation

9

of Plaintiff's First and Fourteenth Amendment rights." (Compl. ¶ 10.) This bald assertion falls well short of adequately pleading a conspiracy. *See Lynn v. Christner*, 184 F. App'x 180, 184 (3d Cir. 2006). Accordingly, Leibert's conspiracy claims will be dismissed.

### C. Claims Against PHA

Municipal liability under § 1983 is limited to those circumstances in which the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Although the Amended Complaint recites that the individual defendants' actions were taken as a result of a policy or custom, it does not identify any facts to support a plausible inference of an unlawful policy or custom.

## IV. CONCLUSION

For the reasons stated above, the Court grants Defendants' motions. An Order consistent with this Memorandum will be docketed separately.